**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

**JONATHAN STONE,**                                      :

         **Petitioner**                         :      **CIVIL ACTION NO. 3:17-0233**

**v.**                                                           :              **(JUDGE MANNION)**

**Superintendent, SCI-Albion,**          :

         **Respondent**                        :


**<u>MEMORANDUM</u>**

Petitioner, Jonathan Stone, an inmate confined in the State Correctional Institution, Albion, Pennsylvania, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. (Doc. 1). He challenges his guilty plea entered in the Court of Common Pleas of Lebanon County. <u>Id</u>. The petition is ripe for disposition. For the reasons outlined below, the petition will be denied.


I.   **<u>Factual and Procedural Background</u>**

The factual and procedural background is extracted from the Pennsylvania Superior Court's August 1, 2016 Memorandum Opinion

affirming the denial of Stone's petition filed pursuant to the Post Conviction

Relief Act (PCRA), 42 Pa.C.S.A. §§9541-9546, and is as follows:

The PCRA court summarized the underlying facts of this case as

follows:

> During the summer of 2010, [Appellant] was developed
> as a suspect in a continuing course of burglaries
> spanning from early 2009 and continuing through April
> 2011 around the Cornwall Borough, West Cornwall
> Township, and Mount Gretna areas of Lebanon County,
> Pennsylvania. These crimes appeared to be consistent
> with similar burglaries occurring in Union Township,
> Swatara Township, and Jonestown Borough, Lebanon
> County, Pennsylvania. Sergeant Brett Hopkins (herein
> Sgt. Hopkins) of the Cornwall Borough Police
> Department, Trooper Wesley Levan (herein Tpr. Levan)
> of the Pennsylvania State Police, and Detective Michael
> Dipalo (herein Det. Dipalo) of the Lebanon County
> Detective Bureau investigated the crimes and found that
> the perpetrator(s) appeared to know the victims would
> not be home. The perpetrator(s) also appeared to target
> jewelry and other valuables including silver flatware and
> grandfather clocks. As the investigation continued,
> investigators concluded that [Appellant] and/or one of his
> known associates had some connection to the targeted
> locations or victims. Some of the homes burglarized
> were in close proximity to [Appellant's] grandmother's
> residence [in], Mount Gretna, Lebanon County,
> Pennsylvania, where [Appellant] resided. Some of the
> burglaries occurred in residences where [Appellant] had
> done work as a home improvement contractor.
>
> [Appellant] was injured while attempting to flee from a
> burglary in Camp Hill and was placed in the hospital
> ward with a broken leg. At this time, [Appellant] reached
> out to Sgt. Hopkins offering to cooperate with the
> investigators and provide them with information

regarding the string of Burglaries and Thefts in the area. [Appellant] believed he could reduce any potential sentence by cooperating with law enforcement. After being read his Miranda[1] warnings, [Appellant] voluntarily provided statements to the police concerning the incidents under investigation and agreed to show police the residences he had burglarized and where he stored some of the stolen items. [Appellant] continuously asked and spoke of being given consideration for his cooperation. Throughout the initial interrogation with Sgt. Hopkins, [Appellant] asked about the Crossroads Program or other drug and alcohol treatment programs. Sgt. Hopkins said they could ask the District Attorney (herein DA). The notion of drug and alcohol treatment stuck in [Appellant's] mind as being set in stone. [Appellant] was later charged with the offenses to which he had confessed. Around the same time period, [Appellant] was charged with similar offenses in Cumberland, Lancaster and York counties, to which he also pleaded guilty. [Appellant] was sentenced to periods of incarceration in all four counties for the Burglary charges while the Theft charges were *nolle prossed* or merged for purposes of sentencing.

More specifically, with regard to the above-captioned matter, on November 30, 2011, Appellant was charged with twenty-three counts of theft by unlawful taking, twenty-two counts of burglary, two counts of criminal conspiracy, and one count each of dealing in proceeds of unlawful activities, corrupt organizations, receiving stolen property, and possession of an instrument of crime. On May 2, 2012, Appellant entered an open guilty plea to all charges. On June 13, 2012, the trial court sentenced Appellant to serve an aggregate term of incarceration of twenty to forty years, pay costs and fines, and make restitution to the victim. On August 8, 2013, this Court affirmed Appellant's judgment of sentence. Commonwealth v. Stone, 1301 MDA 2012, 83 A.3d 1061 (Pa. Super. filed August 8, 2013) (unpublished memorandum).

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

On July 9, 2014, Appellant, *pro se*, filed the instant PCRA petition. On July 11, 2014, the PCRA court appointed counsel, who filed an amended PCRA petition on April 22, 2015. The PCRA court held a hearing on May 21, 2015. On September 15, 2015, the PCRA court entered an order denying relief. This timely appeal followed. Both Appellant and the PCRA court have complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our consideration:

> 1. Whether Plea Counsel was ineffective for unlawfully inducing Appellant into accepting a guilty plea, where Plea Counsel failed: (1) To give Appellant the requested discovery; and (2) To discuss the elements of and the defenses to every charge to determine whether the alleged crimes were actually burglary or theft in nature as Appellant did not understand the statutory difference between burglary and theft?

> 2. Whether Plea Counsel was ineffective for failing to file Post-Sentence Motions to withdraw Appellant's Guilty Plea and for Reconsideration of Sentence, where Appellant and Appellant's father explicitly requested Plea Counsel to file said Motions?

> 3. Whether Appellant was denied his constitutionally guaranteed right to due process when the Commonwealth breached their initial plea agreement where Appellant was to be placed in a drug rehabilitation center in exchange for cooperating with the police during their investigation when he was represented by Attorney Susan Pickford during police interrogation?

(Doc. 35 at 64-57, Pennsylvania Superior Court Memorandum Opinion). On

August 1, 2016, the Pennsylvania Superior Court affirmed the PCRA Court's

order denying Stone's PCRA petition, finding that his issues lacked arguable merit. Id.

On August 29, 2016, Stone filed a Petition for Allowance of Appeal to the Pennsylvania Supreme Court. (Doc. 18-11). By Order dated December 30, 2016, the Pennsylvania Supreme Court denied the Petition for Allowance of Appeal. (Doc. 18-12).

On February 8, 2017, Petitioner filed the instant petition for writ of habeas corpus, in which he raises the following issues for review:

> (i) Denial of Due Process and effective assistance of counsel where plea counsel illegally induced Petitioner into accepting a guilty plea.
>
> (ii) Denial of effective assistance of counsel where plea counsel was informed of business contracts that would prove Petitioner's legitimate presence at the alleged burglaries, but counsel refused to investigate their validity or usefulness.
>
> (iii) Denial of Due Process and effective assistance of counsel where plea/appellate counsel filed an Anders brief on direct appeal without ever having a transcript of the relevant proceedings.
>
> (iv) Denial of effective assistance of counsel where counsel failed to file pre- and post-sentence motions requested by Petitioner.
>
> (v) Denial of Due Process and/or Fifth Amendment rights where the Commonwealth breached the initial plea agreement and/or coerced Petitioner's cooperation, leading to an illegally induced plea.

(Doc. at 2).

In accordance with a Court Order (see Doc. 26), the parties addressed the timeliness of the above captioned petition, (Docs. 34-36), and have demonstrated that the above captioned petition is, indeed timely. Thus, the Court will address Petitioner's issues, seriatim, below.

**II.   Legal Standards of Review**

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." Harrington v. Richter, 562 U.S. 86, 91 (2011). Federal courts reviewing habeas corpus petitions "must be vigilant and independent ... a commitment that entails substantial judicial resources." Id. When reviewing, under 28 U.S.C. §2254, the constitutionality of a state prisoner's conviction and sentence, federal habeas courts "are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism." Martinez v. Ryan, 566 U.S. 1, 9 (2012).

A. Federal Habeas Review of Properly Exhausted Claims

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §§2241–2254, mandates that petitioners demonstrate that they have "exhausted the remedies available in the courts of the State" before

seeking federal habeas relief. 28 U.S.C. §2254(b)(1)(A). An exhausted claim is one that has been "fairly presented" to the state courts "by invoking one complete round of the State's established appellate review process," and which has been adjudicated on the merits. See Carpenter v. Vaughn, 296 F.3d 138, 146 (3d Cir. 2002) (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999)); Johnson v. Williams, 568 U.S. 289, 302 (2013). "Fair presentation" of a claim merely requires the petitioner to "present [the] federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." Greene v. Palakovich, 606 F.3d 85, 93 (3d Cir. 2010) (citation omitted). For §2254(d) purposes, a claim has been adjudicated on the merits "when a state court has made a decision that finally resolves the claim on the basis of its substance, rather than on a procedural, or other, ground." Collins v. Sec'y of Pa. Dep't of Corr., 742 F.3d 528, 545 (3d Cir. 2014) (quoting Thomas v. Horn, 570 F.3d 105, 117 (3d Cir. 2009)).

When a claim is properly exhausted in the state courts and then raised on federal habeas review, the level of deference afforded to the state-court decision is substantial. Bey v. Superintendent Greene SCI, 856 F.3d 230, 236 (3d Cir. 2017), petition for cert. filed sub nom., Gilmore v. Bey, No. 17-681 (U.S. Nov. 8, 2017). The AEDPA "does not 'permit federal judges to ...

casually second-guess the decisions of their state-court colleagues or defense attorneys.' " Collins, 742 F.3d at 543 (quoting Burt v. Titlow, 134 S. Ct. 10, 13 (2013)). Accordingly, under §2254(d), federal habeas relief is unavailable for exhausted claims unless the state-court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law ... or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d).

This is an intentionally difficult standard to meet. Richter, 562 U.S. at 102. Section 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" clearly established Supreme Court precedent. Id. Therefore, to obtain federal habeas relief on an exhausted claim, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Id. at 103.

Finally, "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petition[er] must overcome the limitation of §2254(d)[ ] on the record that was before that state court"; "evidence introduced in federal

court has no bearing on §2254(d)[ ] review." Cullen v. Pinholster, 563 U.S. 170, 185 (2011) (footnote omitted). "[D]istrict courts cannot conduct evidentiary hearings to supplement the existing state court record under 28 U.S.C. §2254(d). Otherwise, federal habeas petitioners would be able to circumvent the finality of state court judgments by establishing a new factual record." Brown v. Wenerowicz, 663 F.3d 619, 629 (3d Cir. 2011). "This would contravene AEDPA, which requires petitioners to diligently present the facts in state court before proceeding to the federal courthouse." Id.

   B. Federal Habeas Review of Unexhausted, Defaulted Claims

   If a state prisoner has not fairly presented a claim "to the state courts but state law clearly forecloses review, exhaustion is excused, but the doctrine of procedural default may come into play." Carpenter, 296 F.3d at 146 (citations omitted). Generally, if a prisoner has procedurally defaulted on a claim by failing to raise it in state-court proceedings, a federal habeas court will not review the merits of the claim, even one that implicates constitutional concerns. Martinez, 566 U.S. at 9 (citing Coleman v. Thompson, 501 U.S. 722, 747-48 (1991) and Wainwright v. Sykes, 433 U.S. 72, 84-85 (1977)). A few limited exceptions to this rule exist.

   One exception is that "[a] prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a

violation of federal law." Id. at 10 (citing Coleman, 501 U.S. at 750). "Cause for a procedural default exists where something external to the petitioner, something that cannot fairly be attributed to him[,] ... impeded [his] efforts to comply with the State's procedural rule." Maples v. Thomas, 565 U.S. 266, 280 (2012) (alterations in original) (citations and internal quotation marks omitted). To establish prejudice, a petitioner must show not merely that there were errors that created a possibility of prejudice, but that they "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Holland v. Horn, 519 F.3d 107, 112 (3d Cir. 2008) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)). If cause and prejudice are established, the federal court reviews the claim "*de novo* because the state court did not consider the claim on the merits." Bey, 856 F.3d at 236 (citation omitted).

Another rare exception that will excuse a procedural default is if the petitioner can show that "failure to consider the claim will result in a fundamental 'miscarriage of justice.' " Carpenter, 296 F.3d at 146 (quoting Coleman, 501 U.S. at 750). To satisfy the "fundamental miscarriage of justice" exception, a petitioner typically will have to show actual innocence. Leyva v. Williams, 504 F.3d 357, 366 (3d Cir. 2007) (citation omitted).

C. Ineffective Assistance of Counsel Claims, Generally

It is firmly established that claims of ineffective assistance of counsel are governed by Strickland v. Washington, 466 U.S. 668 (1984). The burden is on the defendant to prove such a claim. Strickland, 466 U.S. at 687.

Strickland sets forth a two-prong test to assess claims of ineffective assistance of counsel. First, counsel's performance must be deficient. Jacobs v. Horn, 395 F.3d 92, 102 (3d Cir. 2005) (citing Strickland, 466 U.S. at 687). "Performance is deficient if counsel's efforts 'fell below an objective standard of reasonableness' under 'prevailing professional norms.' " Shotts v. Wetzel, 724 F.3d 364, 375 (3d Cir. 2013) (quoting Strickland, 466 U.S. at 688). However, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Grant v. Lockett, 709 F.3d 224, 234 (3d Cir. 2013) (quoting Strickland, 466 U.S. at 689).

Second, counsel's deficient performance must have prejudiced the defendant. Jacobs, 395 F.3d at 105 (citing Strickland, 466 U.S. at 692). "To demonstrate prejudice, 'a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " Shotts, 724

F.3d at 375 (quoting Strickland, 466 U.S. at 694). In the context of a guilty plea, prejudice can be demonstrated by "a 'reasonable probability that, but for counsel's errors, [a defendant] would not have pleaded guilty and would have insisted on going to trial." Lee v. United States, 137 S. Ct. 1958, 1965 (2017) (citation omitted). The Court cautioned that "courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." Id. at 1967.

The two-pronged test established in Strickland "qualifies as 'clearly established Federal law' " for purposes of the AEDPA. See Rainey v. Varner, 603 F.3d 189, 197 (3d Cir. 2010) (quoting Williams v. Taylor, 529 U.S. 362, 391 (2000)). Therefore, under §2254(d)(1), the relevant inquiry in assessing ineffectiveness claims that have been adjudicated on the merits is whether the state court's decision involved an unreasonable application of Strickland or are based on an unreasonable determination of the facts. See Jacobs v. Horn, 395 F.3d 92, 107 n.9 (3d Cir. 2005). Moreover, Pennsylvania's three-pronged test for ineffective assistance claims, see Commonwealth v Pierce, 515 Pa. 153, 527 A.2d 973, 975-77 (Pa. 1987), is not contrary to Strickland, see Jacobs, 395 F.3d at 107 n.9.

D.  Martinez  Exception—Ineffectiveness  of  Initial-Review  Collateral
Counsel

In Coleman, the Supreme Court held that ineffectiveness of post-conviction counsel does not qualify as "cause" to excuse procedural default that occurs in those proceedings, as there is "no constitutional right to an attorney in state post-conviction proceedings." Coleman, 501 U.S. at 752. In Martinez, however, the Court provided a narrow exception to this rule. There, the Court held that:

> [w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding ... counsel in that proceeding was ineffective.

Martinez, 566 U.S. at 17. Pennsylvania is such a state with a bright-line rule that requires ineffective-assistance-of-counsel claims to be raised on collateral review. See Cox v. Horn, 757 F.3d 113, 124 n.8 (3d Cir. 2014) (citing Commonwealth v. Grant, 813 A.2d 726, 738 (Pa. 2002)). Thus, under Martinez, "counsel's failure to raise an ineffective assistance [of trial counsel] claim on collateral review may excuse a procedural default if: (1) collateral attack counsel's failure itself constituted ineffective assistance of counsel

- 13 -

under Strickland, and (2) the underlying ineffective assistance claim is a substantial one." Bey, 856 F.3d at 237-38.

Therefore, in the instant case, ineffectiveness of initial-review PCRA counsel can qualify as "cause" to excuse a procedural default of a claim of ineffective assistance of trial counsel, so long as that defaulted claim is substantial. A "substantial" claim is one that "has some merit." Martinez, 566 U.S. at 14. Notably, the Supreme Court of the United States has explicitly rejected the extension of the Martinez exception to underlying claims of ineffective assistance of direct-appeal counsel. Davila v. Davis, 137 S. Ct. 2058, 2065 (2017).

E. "Doubly" Deferential Standard Applied Under 28 U.S.C. § 2254(d) to Exhausted Ineffective-Assistance-of-Counsel Claims

When a claim of ineffective assistance of counsel has been exhausted in state court, review of that claim by a federal habeas court is significantly circumscribed. The federal court does not review the Strickland claim *de novo*; rather, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable." Richter, 562 U.S. at 101; Collins, 742 F.3d at 547-48. As such, "so long as fairminded jurists could disagree on the correctness of the state court's decision," a state court's determination that a Strickland claim lacks merit precludes federal habeas relief. Id.

- 14 -

**III.   Discussion**

1. Denial of Due Process and effective assistance of counsel where plea counsel illegally induced Petitioner into accepting a guilty plea.

Petitioner argues that he was denied due process as a result of "counsel's failures" which he claims, "caused an illegally induced plea." (Doc. 2 at 6). Specifically, he claims that counsel failed to "provide and review with Petition discovery materials" and to "explain the differences between Burglary and Theft", which resulted in "an involuntary plea." Id.

Petitioner exhausted this claim through the state courts, with the Pennsylvania Superior Court, applying the appropriate Strickland federal standard, (see Doc. 35 at 67-68), adopting the PCRA court's Opinion as its own and affirming that Petitioner's allegations that trial counsel provided ineffective assistance with regard to the unlawful inducement of the guilty plea lacked merit.

A. Failure to Give Petitioner Discovery

Petitioner claims that he had requested, "both orally and in writing" on multiple occasions, that plea counsel provide him his "discovery packet" and go over it with him. (Doc. 2 at 5). Specifically, Petitioner claims that "the discovery was on computer discs" and "Petitioner has yet to ever receive any discovery in these cases." Id.

Where a criminal defendant enters a guilty plea upon the advice of counsel, the voluntariness of that plea can depend on whether "counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.' " Hill v. Lockhart, 474 U.S. 52, 56 (1985). The Strickland test is to be applied to challenges to guilty pleas based on ineffective assistance of counsel. Id. at 57. However, in the context of a challenge to a guilty plea, to satisfy the Strickland prejudice requirement, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

The Superior Court adopted the PCRA Court's analysis of this claim, which is as follows:

> Petitioner alleges that Plea Counsel unlawfully induced him to enter a plea of guilty because he failed to provide Petitioner with the discovery materials which he had requested. Petitioner alleges that Att. Buchanio failed to provide him with the discovery materials from the DA. Petitioner alleges that this failure rises to the level of ineffective assistance of counsel. Att. Buchanio testified that the received discovery from the Commonwealth which consisted of two disks, multiple pages of material, and the Criminal Information. (Hearing Transcript at p. 77). Att. Buchanio reviewed all of the discovery provided to him. On disk contained photos of the items stolen in this matter and the other was the audio file of Petitioner's confession to police.
>
> Att. Buchanio testified that he did give Petitioner a copy of the Criminal Information so that he could review all of the charges against him in this case but does not recall Petitioner asking for

the rest of discovery. (Hearing Transcript at pp. 77-78). He further testified that if Petitioner had specifically requested copies of all of the discovery, he would have provided such copies to Petitioner. (Hearing Transcript at pp. 78-79). Att. Buchanio did recall asking Petitioner if he wanted to challenge the confession, but Petitioner did not want to do so because he had been given his rights prior to making a statement to police. (Hearing Transcript at p. 78). Petitioner has not identified anything in the discovery materials that would have led him to go to trial or that failure to produce those materials to Petitioner was so unreasonable under the circumstances of this case that it rose to the level of manifest injustice. Petitioner has not shown how this alleged failure unlawfully induced him to enter a guilty plea in this case.

(Doc. 18-9 at 10).

## B. Failure to Explain Differences between Charges

Petitioner claims that plea counsel failed to explain the elements of, and the defense to, Burglary and Theft by Unlawful Taking to him. (Doc. 2 at 9). He argues that had plea counsel defined these charges to Petitioner, he would have told counsel that some of the Burglary charges should have been Theft by Unlawful Taking charges because of the facts of the offense. Id. Specifically, he alleges that in two instances the buildings were abandoned and in one instant he was in the building to use the restroom and get a rake for work. Petitioner concludes that plea counsel's failure to define the offenses so that Petitioner understood them, unlawfully induced him to enter a guilty plea to all the offenses as charged instead of challenging the factual basis for the charges at trial. Id.

The Superior Court adopted the following findings with respect to Petitioner's claim that plea counsel failed to explain the differences between the charges:

> Plea counsel testified at the Hearing that he defined each of the offenses with which Petitioner was charged and then reviewed the factual basis for each individual charge. Plea Counsel explained that he did not define the offense as he went over each charge because there were multiple charges for Burglary and Theft. He explained the elements of each type of offense and the defenses thereto prior to reviewing the factual basis for each individual count of the Criminal Information with Petitioner. This Court notes that Petitioner was charged under the same statutes in Cumberland[2], Lancaster[3], and York[4] Counties around the same time as the charges in this case. Petitioner pleaded guilty in all four counties.[5]
>
> This Court believes that Att. Buchanio did explain the elements of and the defenses to the charges of Burglary and Theft to Petitioner prior to the entry of Petitioner's open guilty plea. Even if Att. Buchanio had not done so, this Court finds it difficult to believe that no one explained the charges of Burglar and Theft to Petitioner so that he understood the difference between them or the defenses to them. Petitioner was charged under the same statutes in three other counties and was represented by separate counsel in each of those cases. It seems highly unlikely that none of Petitioner's attorneys explained these charges to him prior to

---

[2] CP-21-CR-2705-2011; CP-21-2706-2011; CP-21-2707-2011; CP-21-2708-2011; CP-21-2708-2011; CP-21-2709-2011; CP-21-2710-2011; CP-21-2711-2011; and CP-21-1502-2011.

[3] CP-36-CR-31-2012 and CP-36-CR-39-2012.

[4] CP-67-CR-402-2012.

[5] Petitioner pleaded guilty on the following dates: Cumberland County (all docket numbers) on March 1, 2012; York County on April 18, 2012; and Lancaster County (both docket numbers) on September 7, 2012. Lancaster is the only county in which Petitioner pleaded guilty after he pleaded guilty in this matter.

him pleading guilty. Petitioner entered his guilty plea in Lebanon County after pleading guilty and being sentenced in Cumberland and York Counties.

Further, this Court goes through an oral colloquy, as required, at the time any person enters a guilty plea. It is the practice of this Court to review the written guilty plea colloquy and ask the individual if they understand the charges against him/her and admit to the factual basis as set forth in the Criminal Information. This Court will not accept a guilty plea unless and until the Court is satisfied that the individual has had sufficient time to review the charges and the factual basis with counsel. While we are without a transcript in this case, this Court does not vary from the general outline of questions asked of defendant's entering guilty pleas before him, which includes the questions mentioned above. (See Hearing Transcript at pp 24-52).

(Doc. 18-9 at 12-13).

It is apparent from the transcript, referenced in the state courts' decisions, that the oral colloquy addressed, among other topics, Petitioner's understanding of the written guilty plea colloquy, his understanding of the terms of the plea agreement, the absence of coercion, his wavier of rights, his understanding of the charges against him, and his satisfaction with his plea counsel. (See Doc. 18-1, Guilty Plea Colloquy; Doc. 18-8, Transcript of PCRA Proceedings). This Court's review of the record shows that Petitioner's plea of guilty to the offenses was made with full knowledge and understanding of the nature of the offense and the full range of potential punishments the court could impose. It further shows that he was not induced to enter the plea and that he freely entered into the same.

- 19 -

Thus, the record in this case afforded an ample basis for the state court's conclusion that Petitioner's plea was knowing and voluntary, and not the product of ineffective assistance of counsel, and the Superior Court's decision adopting the PCRA Court's opinion does not reflect an unreasonable application of Strickland, nor is it an unreasonable application of the facts considering the evidence presented in the trial court.

Moreover, because Petitioner cannot demonstrate prejudice as a result of counsel's alleged inaction, that is, that the outcome of his case would have been different, as a result of plea counsel's failure to provide Petitioner with all discovery, his ineffective assistance of counsel claim fails. See Strickland, 466 at 697 (ineffective assistance claim will be dismissed if the petitioner makes an insufficient showing under either the performance or prejudice prongs); McAleese v. Mazurkiewicz, 1 F.3d 159, 170–171 (3d Cir.1993) (explaining that the court is not required to address issue of counsel's performance if it determines that no prejudice resulted from counsel's conduct). Therefore, Petitioner's ineffective assistance of plea counsel claim is without merit and will be denied.

2. Denial of effective assistance of counsel where plea counsel was informed of business contracts that would prove Petitioner's legitimate presence at the alleged burglaries, but counsel refused to investigate their validity or usefulness.

Petitioner claims that "PCRA counsel was informed prior to, and after, the evidentiary hearing of contracts that Petitioner possessed which gave him permission, via his business, to be present in the homes where the burglaries occurred", but "PCRA counsel refused to utilize the contracts to show plea counsel's ineffectiveness."[6] (Doc. 2 at 12). Petitioner argues that

_____

[6] In particular, Petitioner relies on a November 7, 2014 letter from his PCRA counsel, which responds to the raising of this issue as follow:

> It would be your word against the homeowner's word as to whether you broke into the house and took the items, or took the items when you were invited in.

> An abandoned building is still a building, and if you break in and take something, it's still a charge of theft whether it was abandoned or not.

> Most of the issues that you are looking for were waived when you pled guilty.

> Being on drugs is not mitigating. This was mentioned at sentencing, but you used drugs willingly.

> Using drugs while in prison is also not a mitigating factor. In addition, this was also previously mentioned in court.

> Should you have any additional questions, please feel free to contact my office.

(Doc. 3 at 5).

"plea counsel could have used these documents to, at the least, have burglary charges reduced to thefts, or to use them as a defense at trial." Id. Petitioner acknowledges that this issue has never been raised before the state court and is procedurally defaulted. He "asks this Court, under Martinez, to review the issue *de novo*." Id.

Procedural default can only be overcome with a showing of "cause and prejudice" or by showing a "fundamental miscarriage of justice." Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000); Coleman, 501 U.S. at 750. To show "cause," a petitioner must establish that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). "Prejudice" requires that the "habeas petitioner ... show 'not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.' " Id. at 494 (quoting United States v. Frady, 456 U.S. 152, 170 (1982)).

If a petitioner is unable to demonstrate cause and prejudice, the defaulted claims may still be reviewed if the failure to do so would result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 748. The miscarriage of justice exception is "explicitly tied ... to the petitioner's

innocence." Schlup v. Delo, 513 U.S. 298, 321 (1995). An actual innocence claim "requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." Id. at 324. Petitioner has not produced any new evidence demonstrating his actual innocence. He alleges no new reliable scientific or physical evidence and presents no trustworthy eyewitness exculpatory statements. In fact, at the May 21, 2015, evidentiary hearing, Petitioner admitted to the court that he was not innocent of the charges to which he pled guilty. (Doc. 18-8 at 39).

Petitioner attempts to excuse the procedural default by alleging that PCRA counsel was ineffective for failing to present these claims in state court. Petitioner's attempt, however, to invoke the exception to procedural default announced in Martinez fails. Appointed PCRA counsel reviewed the record and responded to Petitioner with a letter stating that this issue was meritless and was waived by his decision to plead guilty. If Petitioner was dissatisfied with this response, he had a remedy to preserve the claim by seeking leave from the trial court to amend his petition, or by otherwise raising such issue at the evidentiary hearing, while the PCRA court retained jurisdiction. See Commonwealth v. Torres (citing Commonwealth v. Rigg, 84

- 23 -

A.3d 1080, 1085 (Pa. Super. 2014)). Petitioner pursued neither of these avenues of relief. Thus, Petitioner fails to invoke the narrow exception to the rules of procedural default carved out by Martinez, and his claim remains unreviewable.

3. Denial of Due Process and effective assistance of counsel where Plea/Appellant Counsel filed an Anders Brief on direct appeal without ever having a transcript of the relevant proceedings.

Petitioner states that "Plea/Appellate Counsel here made a decision, after a supposed 'conscientious examination of the record,' to not file a Petition to Withdraw the Guilty Plea, to not file a reconsideration of sentence, to not appeal the issue of a breached plea agreement, and to file an Anders brief on the sole issue of abuse of discretion at sentencing – without ever having had a plea hearing transcript." (Doc. 2 at 17). Petitioner questions "how could counsel possibly find any errors or omissions that could lead the Court to allow a post-sentence withdraw, without a transcript?" Id.

Petitioner states that "this issue was not raised in the state proceedings by PCRA counsel" and "is a clear violation by Plea Counsel that should have been raised." Id. As such, Petitioner "requests this Court review the issue, de novo, under Martinez." Id.

The Court finds that Petitioner cannot establish a substantial claim of ineffective assistance of appellate counsel. Initially, the Court notes that

- 24 -

Petitioner's criminal docket sheet reflects that a transcript request was made by counsel on July 10, 2012, and the transcript of proceedings was filed on July 23, 2012. See Commonwealth of Pennsylvania v. Stone, No. CP-38-CR-0001886-2011. Petitioner's Concise Statement of Errors Complained of an Appeal was filed on July 26, 2012,[7] (id.) and was limited to the sole issue of "whether 'the [trial court] abuse[d] the discretionary aspects of sentencing by sentencing [Appellant] an excessive period of time considering the nature of the crimes and harm done by [Appellant]?[8] See doc. 18-5 at 5). Additionally, the Superior Court noted that although Petitioner was served with a copy of counsel's Anders brief, Petitioner had not responded to counsel's petition to withdraw. (Doc. 18-5 at 4). The Superior Court's opinion also refers to the June 13, 2012 sentencing transcript, which is obviously the transcript needed to challenge the discretionary aspect of sentencing. Id. Thus, Petitioner fails to show how he was prejudiced by the lack of existence of his oral plea colloquy transcript. Nor does he attempt to demonstrate how

---

[7] The Court notes that the Petitioner's written guilty plea colloquy and sentencing transcript were also transmitted to the Superior Court for review. Id.

[8] We note that when a defendant enters a guilty plea, he or she waives all defects and defenses except those concerning the validity of the plea, the jurisdiction of the trial court, and the legality of the sentence imposed. Commonwealth v. Boyd, 835 A.2d 812, 819 (Pa. Super. 2003). However, when the plea agreement is open, as it was here, the defendant is not precluded from appealing the discretionary aspects of his sentence. Id.

the transcript could have altered the outcome of his direct appeal proceedings. Consequently, because there is no substantial claim of ineffective assistance of trial/appellate counsel, the default of this issue cannot be excused under Martinez.

4. Denial of effective assistance of counsel where counsel failed to file Pre- and Post-Sentence Motions requested by Petitioner.

Petitioner claims "in [his] pro se PCRA petition, that he had requested Plea Counsel, two days before sentencing, to file a motion to withdraw his guilty plea" and "counsel refused." (Doc. 2 at 17). Petitioner concedes that that this issue, while raised by in his initial PCRA petition, was not raised by Petitioner on appeal, and thus is procedurally defaulted as unexhausted. (Doc. 2 at 19). He argues that "due to PCRA counsel's clear ineffectiveness on this issue, Petitioner qualifies under Martinez to have this issue of first opportunity on PCRA reviewed here, *de novo*." Id. at 19.

The PCRA Court found this claim without merit as follow:

Petitioner alleges that he requested Plea Counsel withdraw his plea before he was sentenced in this matter. The notes of testimony in the Sentencing Transcript belie this allegation. Petitioner spoke at sentencing and acknowledged that he was going to have to spend time in jail. Petitioner said nothing about withdrawing his guilty plea when he spoke on his own behalf in this Court. Petitioner's father also failed to raise the issue with this Court at the time of sentencing. See Sentencing Transcript dated July 13, 2012.

- 26 -

**\*\*\*\***

This is not the first time that Petitioner has entered a plea. Petitioner entered a *nolo contendere* plea in Lebanon County on January 27, 2010. The written plea colloquy which Petitioner filled out in that matter is identical to the guilty plea colloquy initialed and signed by Petitioner in this matter. Petitioner also entered guilty pleas in two (2) other counties on similar charges prior to entering his plea in this matter. Petitioner is well aware of the contents of the written colloquy form and had ample opportunity to seek guidance and advice prior to entering his plea.

Petitioner voluntarily entered an open plea. Petitioner spoke at sentencing and failed to make any mention of a desire to withdraw his plea. Petitioner's father also spoke at sentencing and failed to mention any desire of Petitioner to withdraw his plea. This Court finds that Petitioner did not make a request of Plea Counsel to withdraw his plea prior to sentencing. This Court finds that any request to withdraw Petitioner's guilty plea after the imposition of sentence would have been denied for failure to show manifest injustice.

(Doc. 18-9 at 19-21).

Additionally, at Petitioner's PCRA hearing, both Petitioner and his father, testified again that neither of them communicated to Petitioner's attorney prior to sentencing that Petitioner wished to withdraw his plea. (See Doc. 18-8, Transcript of Proceedings at 23-31, 52-59). Petitioner's attorney corroborated this testimony with the following:

Q: After he plead guilty in his case, did he indicate to you he wanted to withdraw his guilty play (sic)?

A: No. He wanted to withdraw the guilty plea after sentencing, yes. He wanted to me to do whatever I could after the sentencing

to basically reverse the course that had occurred after his sentencing, you know. My early conversations in this case with Jonathan were he was so adamant about the bargain that was offered to him, the promises that were offered to him, that I just couldn't imagine him, you know, telling me a story. He was that adamant. He was, you know, just over the top adamant about I was promised, I was promised, I was promised.

I spoke with Sergeant Brett Hopkins not once but two or three times. Brett Hopkins unequivocally there was never a promise of anything certainly never a written promise which is what I would have been interested in. I spoke with First Assistance District Attorney, then First Assistant District Attorney John Ditzler on several occasions. A pleading is probably not a bad word, but I was literally pleading with him to do anything to lower the bargain that he had initially offered and penned that was part of the discovery. He was adamant in his refusal. He would not lower it and you've heard him testify today that he wasn't interested in doing that in any way, shape, or form. I can't tell you anything that I can't tell you Jonathan ever saying to me I want to withdraw the guilty plea before he was sentenced.

****

Q: Before he was sentenced did his father ever ask you to withdraw his guilty plea?

A: Not beforehand. I met with his father I think I met him in person two or three times on the telephone and met him in person one and maybe met more than once I don't recall but his father just wanted to do whatever he could for John. His father wanted to make sure that the Judge knew that he had – that Jonathan had the support of the family I believe than and I believe now that Jonathan's always had support of the family. When we talked it was what can you say at sentencing, what can you do to try to make things a little bit easier for Jonathan or let the Judge know that when Jonathan got out of jail, when we all knew he was going to jail, that the Judge could see he would have support to get back into the mainstream. So, he did testify at the sentencing, that is to say Jonathan's father.

- 28 -

(Doc. 18-8 at 79-82).

As detailed above, the record clearly demonstrates that Petitioner did not request to withdraw his guilty plea prior to sentencing. The timing of the plea withdrawal discussion was corroborated by Petitioner's father, who testified that he and Petitioner did not inform counsel that Petitioner wanted to withdraw his plea until after the sentencing hearing. The determination that counsel's testimony was credible is governed by the statutory presumption of correctness of state court factual findings found in 28 U.S.C. §2254(e)(1). Petitioner has not offered any evidence to rebut this presumption.

Moreover, the determination that counsel's performance was within an objective standard of reasonableness is entitled to heightened deference, under which "[t]he question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." See Harrington v. Richter, 562 U.S. 86, 105 (2011). Considering this standard, this Court finds that counsel was not ineffective for failing to file a motion to withdraw Petitioner's plea before the sentencing hearing. Based on the foregoing, we find that the underlying otherwise defaulted claim of trial counsel's failure to withdraw Petitioner's guilty plea lacks some merit. Petitioner therefore fails to meet his burden under Martinez, and his claim is procedurally defaulted.

5. Denial of Due Process and/or Fifth Amendment Rights where the
Commonwealth breached the initial plea agreement and/or coerced
Petitioner's cooperation, leading to an illegally induced plea.

Petitioner claims that "he had been promised placement in a treatment

facility in exchange for cooperating with police during their investigation of

these burglaries/thefts." (Doc. 2 at 20). He argues that "but for law

enforcement official's promise of drug rehabilitation in lieu of a prison

sentence, Petitioner would not have revoked his constitutional right to be free

from self-incrimination, nor would he have pled guilty, especially to those

crimes he did not commit." Id.

The PCRA Court found that:

Based on the above, this Court finds that Petitioner has not
established that he was offered a deal for Crossroads in lieu of
jail time. This court further finds: Petitioner was aware at the time
of sentencing that he would be sentenced to a term of
incarceration on these charges, as was his father. The
Commonwealth never offered Petitioner a deal to be sentenced
to drug and alcohol treatment, at Crossroads or elsewhere, in
lieu of jail time in exchange for his cooperation. Thus, Petitioner's
claim of a due process violation lacks merit.

(Doc. 18-9 at 26).

Because this claim was not raised in the context of ineffective

assistance of counsel, on appeal, the Pennsylvania Superior Court found this

claim waived "because Appellant could have raised the issue in his direct

appeal to this Court but did not to so." (Doc. 35 at 7, Memorandum Opinion).

The Court relied on 42 U.S.C. §9544(b) of the PCRA which provides that "an

issue is waived if the petitioner could have raised it but failed to do so before

trial, at trial, during unitary review, on appeal or in a prior state postconviction

proceeding." Id.

It is well-settled that a federal habeas court will not review an issue of

federal law where the petitioner presented the claim to the state courts in a

manner that precluded review on the merits because he failed to comply with

a state procedural requirement, and the decision of the state court refusing

to consider the merits rests on a state law ground that is independent of the

federal question and adequate to support the judgment. Coleman v.

Thompson, 501 U.S. 722, 750 (1991); see Sistrunk v. Vaughn, 96 F.3d 666,

673 (3d Cir. 1996) (concluding, "if the final state court presented with a

federal claim refuses to decide its merits based on an established state rule

of law independent of the federal claim and adequate to support the refusal,

federal habeas review is foreclosed"). Here, Petitioner presented his claim

of Due Process to the Pennsylvania Superior Court.

The Superior Court's finding was a straightforward application of the

PCRA's waiver provisions, and this holding is an independent and adequate

state ground for the state court decision. See Coleman, 501 U.S. at 749–52

(describing "the important interests served by state procedural rules" and "the harm to the States that results when federal courts ignore these rules"). Indeed, the federal courts in this Circuit have consistently and repeatedly held that the PCRA default provisions—its prohibition against previously litigated and waived claims—are independent and adequate state grounds barring federal habeas review. See, e.g., Lines v. Larkins, 208 F.3d 153, 164–66 (3d Cir. 2000), cert. denied, 531 U.S. 1082 (2001); Sistrunk v. Vaughn, 96 F.3d 666, 674–75 (3d Cir. 1996).

Because the PCRA's waiver rule provision is both independent and adequate, Petitioner has procedurally defaulted this claim. He is, accordingly, not entitled to federal habeas review unless he can meet his burden of establishing "cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims would result in a fundamental miscarriage of justice." Coleman, 501 US. at 750; Harris v. Reed, 489 U.S. 255, 260–63 (1989); Morris v. Horn, 187 F.3d 333, 342 (3d Cir. 1999). He cannot do so.

Notably, Petitioner does not even acknowledge his procedural default, let alone allege cause and prejudice to excuse it. For this reason alone, the default must stand. See Teague v. Lane, 489 U.S. 288, 298 (1989) (holding that the petitioner's failure to allege cause for his default precluded federal

habeas review of a defaulted claim). Further, he has not attempted to show that a miscarriage of justice would occur from a failure to consider the defaulted claim. See Schlup, 513 U.S. 298, 327 (1995) (providing that "miscarriage of justice" exception requires petitioner to come forward with new evidence of actual innocence). Because Petitioner has not alleged, and cannot establish, cause and prejudice or a miscarriage of justice to excuse the default, federal review of this claim is unavailable. See Coleman, 501 U.S. at 750.

## IV. **Certificate of Appealability**

Pursuant to 28 U.S.C. §2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. §2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. §2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322 (2003). Petitioner fails to demonstrate that a COA should issue.

- 33 -

The denial of a certificate of appealability does not prevent Petitioner from appealing the order denying his petition so long as he seeks, and obtains, a certificate of appealability from the Third Circuit Court of Appeals. See Fed. R. App. P. 22(b)(1).

**V.   Conclusion**

For the reasons set forth above, the petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 will be denied.

An appropriate order follows.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: February 4, 2021**
17-0233-02

- 34 -